IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CARMELLA LABONNE,

                           Plaintiff,                  OPINION AND ORDER

    v.

                                              07-cv-727-bbc

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                           Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Because Judge Shabaz will be convalescing from shoulder surgery for an extended period, I have assumed administration of the cases previously assigned to him, including this one, which is an action for judicial review of a partially adverse decision of the Commissioner of Social Security brought pursuant to 42 U.S.C. § 405(g). Plaintiff Carmella Labonne seeks reversal of the commissioner's determination that she was not disabled before her fiftieth birthday and therefore ineligible for Disability Insurance Benefits under Title II of the Social Security Act, codified at 42 U.S.C. §§ 416(i) and 423(d). Plaintiff contends that the decision of the administrative law judge who denied her claim is not supported by substantial evidence because he did not find that her congestive heart failure and depression were severe, did not properly determine her residual functional capacity, did not properly consider the

1

opinions of her treating physicians and did not properly assess her credibility.  I find that although the administrative law judge did not consider plaintiff's congestive heart failure and depression to be severe impairments, that omission is immaterial because he properly accounted for the limitations caused by these impairments.  I further find that he properly determined plaintiff's residual functional capacity, properly considered the opinions of her treating physicians and correctly assessed her credibility.  For these reasons, I am denying plaintiff's motion for summary judgment and affirming the administrative law judge's decision.

The following facts are drawn from the administrative record (AR):

## FACTS

### A.  <u>Background and Procedural History</u>

Plaintiff was born on September 25, 1956.  AR 590.  She completed the twelfth grade and has worked as a cook.  AR 590-91.

Plaintiff applied for disability insurance benefits on September 19, 2005, alleging disability since May 15, 2004 because of panic disorder, congestive heart failure, breast cancer and back and neck pain.  AR 65-68, 87.  She applied for supplemental security income on May 18, 2006.  AR 17.

After the local disability agency denied her application initially and upon reconsideration, plaintiff requested a hearing, which was held on January 19, 2007 before Administrative Law Judge John H. Pleuss in Madison, Wisconsin.  The administrative law judge heard testimony from plaintiff, AR 590-99, and from a neutral vocational expert, AR 599-604.  On February 14, 2007, the administrative law judge issued a partially favorable decision, finding plaintiff disabled on September 25, 2006, her 50th birthday, but not before. AR 17-25.  Because plaintiff's eligibility for Disability Insurance Benefits expired on September 30, 2005, he denied her application for Disability Insurance Benefits but granted her application for Supplemental Security Income beginning September 25, 2006.  This decision became the final decision of the commissioner on October 24, 2007, when the Appeals Council denied plaintiff's request for review.  AR 6-9.  Plaintiff challenges the unfavorable portion of the decision.

B. <u>Medical Evidence</u>

On October 15, 2003, before the alleged onset date of her disability, plaintiff saw Dr. Goetsch at the Dean Medical Center Urgent Care Clinic for anxiety.  He diagnosed her with anxiety disorder with palpitations and tachycardia. AR 170.  On October 31, 2003, plaintiff saw Dr. Angela Schwendinger at the Dean Medical Center, complaining that she had been depressed for the previous couple of years.  Plaintiff attributed her depression to her breast

cancer diagnosis and eventual left mastectomy followed by chemotherapy in October 2001. Schwendinger diagnosed plaintiff with major depressive disorder and anxiety disorder, for which she prescribed paroxetine (Paxil). Schwendinger urged plaintiff to get counseling. AR 169.

On April 1, 2004, plaintiff saw Dr. Christopher Gilman to establish primary care. Plaintiff reported that she was anxious and depressed because of fear that her breast cancer might return. Gilman noted that plaintiff was tense and anxious and her mood was dysphoric, although she gave a logical, coherent history of her symptoms. Gilman diagnosed her with anxiety and panic disorder with secondary dysthymia and gave her a trial prescription of Lexapro. AR 157. On May 28, 2004, plaintiff told Gilman that she was doing well on the medication: she was much less stressed, her mood was normal and her panic attacks were fewer and less severe than they had been. Gilman observed that plaintiff's mood and affect were considerably brighter than they had been during previous visits. He described her anxiety and panic disorder as being in "substantial early remission." AR 154.

On November 22, 2004, plaintiff saw Dr. R. Lee Carter for evaluation of her lower back pain and pain radiating into her left leg. Plaintiff also complained of neck pain with pain in both shoulders. Carter noted that plaintiff had a history of a two-level anterior cervical discectomy and fusion in 2001. AR 146. Carter observed during his examination of plaintiff that her gait, muscle strength and reflexes were normal and she had no pain on

4

direct palpation of cervical spine, lumbar spine or sacroiliac joints.  Carter advised plaintiff that the magnetic resonance imaging scan of her lumbar spine showed some degenerative disc disease with intervertebral disc space narrowing at L1-2.  The scan of her cervical spine showed the fusion but was otherwise unremarkable.  Carter indicated that, unless laboratory tests indicated some type of infection, he would treat plaintiff's back pain conservatively with a lumbar brace and daily stretching and range of motion exercises.  AR 147.  Carter attributed plaintiff's neck pain to muscular strain, noting that she had tense paraspinous muscles in the cervical spine region but no significant findings on the MRI scan.

On January 10, 2005, plaintiff was seen by rheumatologist Steven P. Maciolek to evaluate her lower back pain, radiation of pain into her legs and fatigue with walking.  He wrote, "By description, it sounds as if she had premature lumbar and cervical degenerative disease."  He noted that her physical exam did not strongly support a spondyloarthopathy (a family of chronic, inflammatory joint diseases).  Maciolek opined that plaintiff was not likely to be able to do sedentary work because she had to move quite frequently to relieve stiffness and pain.  He recommended that she attempt to do mall walking.  Maciolek indicated that plaintiff might have some secondary fibromyalgia.  AR 143-145.

On August 8, 2005, plaintiff saw nurse practitioner Nancy Ascencio at the Aurora Health Center in Lake Geneva.  Plaintiff complained of increasing lower back pain radiating into her lower left extremities with intermittent numbness and tingling in her left leg.  On

physical exam, plaintiff had a positive straight leg raising test on the left but good strength and reflexes in her lower extremities. An August 9, 2005 magnetic resonance imaging scan of plaintiff's lumbar spine showed degenerative disc disease with minimal disc bulging but without significant nerve root encroachment or narrowing of the spinal canal. AR 238.

Plaintiff has a history of abnormal heart rhythms that have been treated by Dr. Imran Niazi, a cardiologist. In August 2005, a computed tomography scan revealed that plaintiff had a small pericardial effusion. An echocardiogram revealed that plaintiff had a left ventricle ejection fraction of approximately 30-35 percent. (The term "ejection fraction" refers to the percentage of blood that is pumped out of the heart with each heartbeat. A normal ejection fraction is 55 to 70 percent. See http://www.mayoclinic.com/health/ejection-fraction/AN00360 (last visited August 20, 2008). Niazi suspected that plaintiff had developed mild congestive heart failure related to cardiomyopathy (inflammation of the heart muscle) induced by chemotherapy or radiation. AR 394.

On September 8, 2005, Niazi wrote a letter in support of plaintiff's participation in a study. Niazi stated that after reviewing plaintiff's case in depth, he had formed the opinion that plaintiff's heart failure symptoms began in February 2005. He noted that at that time, she began to notice early satiety and bloating and then began having increasing shortness of breath and fatigue in April.

On September 11, 2005, plaintiff was admitted to St. Luke's Hospital Medical Center in Milwaukee for treatment of her atrial flutter and congestive heart failure. Niazi performed radio-frequency ablation for plaintiff's atrial flutter. In addition, he implanted a cardioverter biventricular implanted defibrillator, a programmable device that operates both as a pacemaker and defibrillator. AR 280-92.

On October 13, 2005, Niazi wrote a letter on behalf of plaintiff. He noted that plaintiff continued to have heart failure symptoms, noting that she developed shortness of breath and fatigue with mild exertion and had an ejection fraction of 35%. He explained that because of her symptoms, plaintiff "was currently not able to function in her prior employment situation" and that he had advised her that she should not work "at this time." AR 490. Niazi indicated that plaintiff's medications and defibrillator were being adjusted to improve her functional capacity and that plaintiff might be able to return to work in the future. Id. On October 17, 2005, Niazi completed a medical examination and capacity assessment for plaintiff. He indicated that plaintiff could not lift, could stand and walk only to get from one place to the next, would need to take breaks because of fatigue after sitting for one to two hours and might need to lie down to rest. AR 366-67.

After several adjustments to her defibrillator, plaintiff reported in January 2006 that she was feeling better. She had less shortness of breath, less fatigue and no palpitations. Plaintiff said her lower back hurt, noting that she had fallen off a chair while cleaning. AR

7

374-75. An echocardiogram on January 9, 2006, showed that plaintiff's ejection fraction was still approximately 35%.

On February 2, 2006, Dr. Niazi completed a cardiac residual functional capacity questionnaire for plaintiff. He indicated that plaintiff's cardiac symptoms would interfere frequently with her attention and concentration and that the side effects of her medication were frequent urination, muscle weakness and fatigue. He found that she could stand or walk for less than two hours and sit about two hours in an eight-hour work day with an option to shift positions at will. He indicated that plaintiff was required to elevate her legs to heart level if engaged in prolonged sitting. He indicated that she could occasionally lift less than 10 pounds, occasionally twist, rarely stoop, never crouch, climb ladders or stairs and would have to avoid all exposure to environmental hazards. He concluded that she would miss more than four days of work a month. He stated that these limitations applied as of February 22, 2005. AR 485-89. However, on September 18, 2006, Niazi amended the form and indicated that the earliest date the limitations applied was May 15, 2004, plaintiff's alleged onset date. AR 496. Niazi did not provide any explanation for his changed opinion.

On March 29, 2006, nurse practitioner Ascencio completed a physical residual functional capacity questionnaire for plaintiff. She noted that plaintiff could stand or walk for fewer than two hours in an eight-hour work day, sit for four hours in an eight-hour work

day, would need to walk every 20 minutes, take unscheduled breaks every one to two hours to lie down and would be absent from work more than three times a month.  She also indicated that plaintiff could occasionally lift less than 10 pounds,  use her hands and fingers 25% of the work day and her arms for 10 % of the work day.  She indicated that reaching with her left arm caused plaintiff pain in the mastectomy site and reaching with her right arm caused pain in her pacemaker site.  AR 448-52.

On October 13, 2006, Niazi noted that plaintiff's ejection fraction was 51%.  AR 550. An October 14, 2006 echocardiogram showed plaintiff's ejection fraction was normal, having increased to 55%.  AR 537.

C.  Consulting Physicians

On April 14, 2005, state agency psychologist Keith Bauer completed a Psychiatric Review Technique Form for plaintiff and found she had no severe mental impairments.  AR 193-206.  He found that plaintiff had mild difficulties in maintaining social functioning and mild difficulties in maintaining concentration, persistence or pace.  AR 203.

On November 30, 2005, state agency physician Zhen Lu completed a physical residual functional capacity assessment for plaintiff.  He listed plaintiff's diagnoses as degenerative disc disease of the lumbar and cervical spine, arrhythmia and history of breast cancer.  He found that plaintiff could lift 10 pounds occasionally and less than 10 pounds

frequently, stand or walk two hours in an eight-hour work day, sit six hours in an eight-hour work day and climb, stoop, kneel, crouch and crawl occasionally.  He also found that she should avoid all exposure to hazards.  AR 396-403.  State agency physician Pat Chan affirmed this assessment on March 13, 2006.  AR 404.

On March 16, 2006, Bauer completed a second Psychiatric Review Technique Form for plaintiff, finding that she had no severe mental impairments and no functional limitations.  AR 405-18.

### D.  Hearing Testimony

Plaintiff testified that she lived with her husband and her 11-year-old child.  AR 590. She testified that she had worked as a cook at the Roma Restaurant until May 2004 and as a cook at Charley O's until August 2004, AR 591-592, when she stopped working because of chest pain and shortness of breath.  AR 592.  Plaintiff testified that she has been diagnosed with congestive heart failure.  AR 593.  She also testified that she has pain in her back and legs from her degenerative disc disease.

Plaintiff testified that she suffers from depression and anxiety.  AR 596.  She also testified that she experiences dizziness and drowsiness as the side effects of her medication. AR 597.

Plaintiff testified that she took care of her daughter and did some laundry and cooking. She testified that she sometimes becomes short of breath if she overdoes it at home. When she becomes short of breath, she lies down. AR 593. She testified that she takes two- to three-hour naps twice a day. AR 594. Plaintiff also testified that she drove two or three times a week and went grocery shopping with her husband. AR 597-98. She added that she has problems bending to tie her shoes. AR 599.

E.   The Administrative Law Judge's Decision

In reaching his conclusion that plaintiff was not disabled, the administrative law judge performed the required five-step sequential analysis. See 20 C.F.R. § 404.1520. At step one, he found that plaintiff had not engaged in substantial gainful activity since May 15, 2004. At step two, he found that a plaintiff had severe impairments of a spinal impairment with residuals of cervical fusion and evidence of lumbar disc disease and idiopathic cardiomyopathy attributed to effects of radiation and chemotherapy for cancer. AR 19. The administrative law judge found that plaintiff had no severe mental impairments. He relied on the lack of documentation of any significant treatment for mental issues and the opinions of state agency psychologist Bauer that she had no severe mental impairments. AR 22.

The administrative law judge found at step three that plaintiff did not have a physical impairment or combination of impairments that met or medically equaled any impairment

11

listed in 20 C.F.R. 404, Subpart P, Appendix 1.  AR 20.  With respect to plaintiff's heart condition, he noted that the state agency "had initially felt that the claimant's cardiomyopathy might ultimately meet listing criteria, although this was not an issue at the time in view of her expired insured status and the fact that she did not file an application for Supplemental Security Income until much later."  AR 20.  The administrative law judge went on to observe that in fact, plaintiff had "exhibited considerable medical improvement within a year as a study from October 14, 2006 showed an ejection fraction of 55%."  AR 20-21. He found, therefore, that plaintiff's heart condition did not approach listing level severity. With respect to plaintiff's back condition, the administrative law judge noted that there was no documentation of stenosis or significant spinal disease that would explain plaintiff's left leg radiculopathy and that the records from plaintiff's primary treatment source showed few complaints of back pain.  AR 21.

At step four, the administrative law judge determined that plaintiff had the residual functional capacity to perform sedentary work which would not involve exposure to hazards or frequent postural activities such as climbing, stooping, bending, crouching, crawling or kneeling.  He found that the plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible.  He stated that, "This is particularly true with regard to persistence, as the October 2006 cardiac evaluation suggests that her cardiomyopathy had resolved to a considerable extent."  AR 22. In assessing

12

plaintiff's credibility, the administrative law judge considered plaintiff's daily activities of light housework, child care, cooking, dishwashing and doing laundry. He also stated that plaintiff's treatment records did not reflect a spinal condition so severe as to cause the limitations to which she testified; plaintiff was not taking strong medication for her pain; and no epidural injections or surgery had been recommended.

In determining plaintiff's residual functional capacity, the administrative law judge considered the opinions of nurse practitioner Ascencio and Dr. Niazi. He noted that Ascencio suggested in March 2006 that plaintiff could perform sedentary work but needed to lie down frequently because of back pain. He gave little weight to Ascensio's opinion regarding plaintiff's need to lie down, noting the lack of treatment records indicating that plaintiff's pain was so severe that she would have to lie down and that plaintiff's complaints of back pain had been intermittent. He also noted that epidural injections or surgery had not been recommended and that plaintiff was not taking significant medications for back pain. AR 22.

Noting that Niazi was plaintiff's treating cardiologist, the administrative law judge gave more weight to his opinion because of plaintiff's history of pacemaker surgery and other treatment for significant cardiomyopathy. The administrative law judge found that although Niazi stated on October 13, 2005 that plaintiff could not work "at this time," he later stated that she was limited by her cardiac condition as early as February 22, 2005 and then

13

amended his assessment yet again to reflect limitations as early as May 2004, a date predating the diagnosis of plaintiff's cardiomyopathy in August 2005. The administrative law judge concluded that the evidence suggested that Niazi was trying to assist plaintiff in obtaining disability benefits rather than making an impartial assessment of her abilities. The administrative law judge also noted that Niazi's reports repeatedly cited the ejection fraction of 35%, but did not note the improved rate of 55 % documented in October 2006. AR 23.

The administrative law judge concluded that Niazi and Ascencio had both found that plaintiff would be capable of a range of sedentary work but he found no support in the medical evidence for their opinions that plaintiff needed to be absent from work frequently, elevate her legs because of her cardiac condition and lie down because of her back pain. He concluded that limiting plaintiff to sedentary work was consistent with the findings of the state agency physicians. AR 23.

At step four, the administrative law judge found that plaintiff was not able to perform her past work. At step five, he found that because plaintiff could perform substantially all of the exertional demands of sedentary work, her applications could be decided by direct application of the Medical-Vocational Guidelines, 20 C.F.R., Part 404, Subpart P, Appendix 2 (often referred to as "the grids"). Applying the relevant guidelines, he found the rules directed the finding that plaintiff was disabled as of her fiftieth birthday, September 25, 2006, but not before. The administrative law judge noted that upon turning 50, plaintiff's

14

age category changed from that of a "younger individual" to that of "closely approaching advanced age," and it was that age change that led to the conclusion that plaintiff became disabled on September 25, 2006.  Because plaintiff's eligibility for Disability Insurance Benefits expired on September 30, 2005, plaintiff was not entitled to Disability Insurance Benefits but was entitled to Supplemental Security Income as of her fiftieth birthday.  AR 25.

OPINION

A.  Standard of Review

The standard by which a federal court reviews a final decision by the commissioner is well settled: the commissioner's findings of fact are "conclusive" so long as they are supported by "substantial evidence."  42 U.S.C. § 405(g).  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971).  When reviewing the commissioner's findings under § 405(g), the court cannot reconsider facts, reweigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the administrative law judge regarding what the outcome should be.  Clifford v. Apfel, 227 F.3d 863, 869 (7th Cir. 2000).  Thus, where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on

15

the commissioner.  Edwards v. Sullivan, 985 F.2d 334, 336 (7th Cir. 1993).  Nevertheless, the court must conduct a "critical review of the evidence" before affirming the commissioner's decision, id., and the decision cannot stand if it lacks evidentiary support or "is so poorly articulated as to prevent meaningful review."  Steele v. Barnhart, 290 F.3d 936, 940 (7th Cir. 2002).  When the administrative law judge denies benefits, he must build a logical and accurate bridge from the evidence to his conclusion.  Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001).

## B.  Severe Impairments

Plaintiff argues unpersuasively that the administrative law judge erred at step two in not finding that her depression and congestive heart failure were severe impairments.  An impairment is not "severe" unless it significantly limits a claimant's ability to perform basic work activities.  20 C.F.R. § 404.1521(a).  As the administrative law judge explained, the record contained no documentation of any significant treatment for mental issues and the state agency psychologist found no severe mental impairments.  Although plaintiff received some treatment for depression and anxiety, her symptoms resolved significantly after her doctor prescribed Lexapro in May 2004.  Thereafter, the records show little, if any, treatment for mental issues.   In addition, there is no evidence that she followed through with recommended counseling.  The state agency psychologist found that at the most,

plaintiff had mild functional loss in maintaining social functioning and maintaining concentration, persistence or pace.  All of this evidence amply supports the administrative law judge's conclusion that plaintiff's mental impairments did not significantly limit her mental ability to do basic work activities.  The administrative law judge did not err in finding no severe mental impairment or in failing to include mental limitations in his residual functional capacity assessment.

The administrative law judge's failure to list congestive heart failure as one of plaintiff's severe impairments is immaterial.  Step two is a threshold analysis that requires a claimant to show only that he has *one* severe impairment.  Golembiewski v. Barnhart, 322 F.3d 912, 918 (7th Cir. 2003) ("Having found that one or more of [appellant's] impairments was 'severe,' the ALJ needed to consider the aggregate effect of the entire constellation of ailments."); Hickman v. Apfel, 187 F.3d 683, 688 (7th Cir. 1999) ("[I]t is quite apparent that severity is merely a threshold requirement.").  The administrative law judge found that plaintiff had the severe impairment of idiopathic cardiomyopathy, which is the condition that led to her heart failure.  He observed that plaintiff had undergone pacemaker surgery and other treatment for significant cardiomyopathy.  Further, he mentioned that plaintiff had congestive heart disease when he discussed her subjective complaints. Most important, he considered all of the medical evidence concerning plaintiff's heart conditions and the medical opinions of Niazi and the state agency physicians concerning the limitations

17

resulting from those conditions.  Because the administrative law judge properly considered the limitations posed by plaintiff's heart condition, his failure to find "congestive heart failure" to be a severe impairment had no bearing on the outcome.  Gentle v. Barnhart, 430 F.3d 865, 866 (7th Cir. 2005) ("The social security disability benefits program is not concerned with health as such, but rather with ability to engage in full-time gainful employment").

## C.  Residual Functional Capacity Assessment

Plaintiff raises a number of challenges to the administrative law judge's residual functional capacity assessment.  First, she contends that the administrative law judge erred in his consideration of the opinions of Niazi and nurse practitioner Ascencio.  With respect to Niazi, plaintiff argues that the administrative law judge did not give enough weight to his status as plaintiff's treating physician and as a cardiac specialist.  Although an administrative law judge must consider all medical opinions of record, he is not bound by those opinions.  Haynes v. Barnhart, 416 F.3d 621, 630 (7th Cir. 2005).  "[T]he weight properly to be given to testimony or other evidence of a treating physician depends on circumstances."  Hofslien v. Barnhart, 439 F.3d 375, 377 (7th Cir. 2006).  When a treating physician's opinion is well supported and no evidence exists to contradict it, the administrative law judge has no basis on which to refuse to accept the opinion.  Id.; 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

18

When, however, the record contains well-supported contradictory evidence, the treating physician's opinion "is just one more piece of evidence for the administrative law judge to weigh," taking into consideration the various factors listed in the regulation.  Id.  These factors include how often the treating physician has examined the claimant, whether the physician is a specialist in the condition claimed to be disabling, how consistent the physician's opinion is with the evidence as a whole, and other factors.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  An administrative law judge must provide "good reasons" for the weight he gives a treating source opinion.  Id.  If supported by substantial evidence, a finding that a physician is biased in favor of his client is a good reason to reject his opinion.  Dixon v. Massanari, 270 F.3d 1171, 1177 (7th Cir. 2001).

Here, the administrative law judge recognized that Niazi was both plaintiff's treating physician and a cardiologist.  Nevertheless, he decided not to give Niazi's opinion controlling weight because he seriously doubted Niazi's objectivity.  He noted that Niazi had originally indicated that plaintiff's cardiac problems began on February 22, 2005, but then later amended his opinion to indicate that plaintiff's problems began on her alleged onset date, May 15, 2004.  As the administrative law judge observed, the earlier onset date is inconsistent with the evidence, which showed that plaintiff's cardiomyopathy was not diagnosed until August 2005.  In light of Niazi's unexplained change of opinion regarding the onset of plaintiff's cardiac-related limitations, it was not unreasonable for the

19

administrative law judge to question Niazi's credibility.  Further, Niazi's reports did not account for the improvement in plaintiff's ejection fraction documented in October 2006. Although plaintiff observes correctly that Niazi was not asked to provide any opinion after October 2005, the administrative law judge nonetheless had good reason to question whether plaintiff was still as limited as Niazi had indicated.

Similarly, the administrative law judge reasonably gave little weight to the severe limitations endorsed by Ascencio in her March 2006 residual functional capacity questionnaire.  The administrative law judge found Ascensio's opinion that plaintiff would need to lie down frequently to relieve her back pain to be inconsistent with the treatment records, which did show any significant spinal abnormality, persistent complaints by plaintiff of back pain or significant treatment measures for the back pain.  Contrary to plaintiff's contention, in making these findings, the administrative law judge did not impermissibly "play doctor" and make conclusions about the medical evidence that he was not authorized to make.  Rather, he reviewed the record as a whole to determine whether Ascensio's opinion was adequately supported by the clinical notes and other evidence in the record.  I am persuaded that he did not err in concluding that it was not.

Next, plaintiff argues that the administrative law judge mischaracterized Niazi's and Ascensio's opinions when he found that they were consistent with a finding that plaintiff could perform a "narrow range of sedentary work" and then relied on this as support for his

20

conclusion that plaintiff was capable of performing sedentary work. Sedentary work is defined as work that involves primarily sitting, with lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. 20 C.F.R. § 404.1567(a). In finding that Ascensio and Niazi had found plaintiff capable of performing a limited range of sedentary work, the administrative law judge was referring to their opinion that plaintiff was capable of lifting 10 pounds occasionally and could sit somewhere between two and four hours a day. In any case, even if the administrative law judge might have overstated Ascensio and Niazi's opinions, remand is unnecessary because, as discussed previously, the administrative law judge provided adequate reasons for finding neither opinion persuasive. Having rejected those opinions, the administrative law judge was entitled to rely on the opinions of the state agency physicians, so long as *those* opinions were consistent with the remainder of the record.

The administrative law judge explained that the finding by the state agency physicians that plaintiff could perform a reasonable range of sedentary work was consistent with the evidence of plaintiff's cardiac improvement and with her activities, which consisted of light housework, child care, cooking, dishwashing and laundry. Although plaintiff characterizes her activities as "minimal" and argues that they are inconsistent with the ability to perform work, I am satisfied that the administrative law judge could reasonably conclude otherwise. Notably, many of plaintiff's activities required more exertion than that of the sedentary work

21

the administrative law judge found her capable of performing.  The administrative law judge
could reasonably find that at a lower level of exertion and with her improved cardiac status,
plaintiff could sustain competitive employment and would not need to lie down frequently
or sit with her legs elevated.  In sum, the administrative law judge provided adequate reasons,
supported by substantial evidence in the record, for his decision to accept the opinions of the
state agency physicians over those of Niazi and Ascensio regarding plaintiff's functional
abilities.

Plaintiff's remaining challenges to the administrative law judge's decision are
unpersuasive.  She argues that the administrative law judge failed to fulfill the requirements
of Social Security Ruling 96-8p, which requires the administrative law judge to assess a
claimant's ability to lift, sit, stand, carry and perform other exertional tasks before expressing
that person's residual functional capacity under the categories of sedentary, light, medium
or heavy.  Further, a section entitled, "Narrative Discussion Requirements" in Social Security
Ruling 96-8p provides:

> The RFC assessment must include a narrative discussion
> describing how the evidence supports each conclusion, citing
> specific material facts (e.g., laboratory finding) and nonmedical
> evidence (e.g. daily activities, observations).  In assessing RFC,
> the adjudicator must discuss the individual's ability to perform
> sustained work activities in an ordinary work setting on a
> regular and continuing basis (i.e. 8 hours a day , for 5 days a
> week, or and equivalent work schedule) and describe the
> maximum amount of each work related activity the individual

22

> can perform based on the evidence available in the case record.
> The adjudicator must also explain how any material
> inconsistencies or ambiguities in the evidence in the case record
> were considered and resolved.

In this case, the administrative law judge determined that plaintiff could perform sedentary work, that is, work that requires lifting no more than 10 pounds at a time, occasionally lifting or carrying articles like docket files, ledgers and small tools and occasionally walking and standing. He further limited plaintiff to work that would not involve exposure to hazards or frequent postural activities such as climbing, stooping, bending, couching, crawling or kneeling. In his decision, the administrative law judge reviewed plaintiff's daily activities, the medical evidence and the state agency assessments to find that plaintiff could perform sedentary work. The state agency physicians specifically found that plaintiff could lift 10 pounds occasionally and less than ten pounds frequently, could stand or walk two hours in an eight hour work day and sit six hours in an eight-hour work day with occasional climbing, stooping, kneeling, crouching and crawling.

By reviewing and weighing the medical and non-medical evidence and the various opinions regarding plaintiff's ability to perform work-related activities and explaining the basis for his residual functional capacity assessment, the administrative law judge fulfilled the narrative discussion requirements of SSR 96-8p. Although he did not analyze each of the various work-related functions directly in his decision, he did so indirectly when he

23

considered the opinions of the state agency physicians.  Further, he gave specific reasons why he rejected Niazi's opinion that plaintiff would need to sit with her legs elevated and have frequent rest breaks and Ascensio's opinion that plaintiff would need to lie down frequently. Overall, his decision shows that he considered plaintiff's work-related abilities on a function-by-function basis.

Finally, plaintiff contends that remand is required because the administrative law judge did not discuss each of the seven factors identified in Social Security Ruling 96-7p in arriving at his conclusion that plaintiff's statements were not entirely credible.   Social Security Ruling 96-7p provides that in assessing the credibility of a claimant's subjective complaints, the administrative law judge must evaluate the individual's daily activities; the location, duration, frequency and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate symptoms; type, dosage, effectiveness and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; other treatment or measures taken for relief of pain; the individual's prior work record and efforts to work; and any other factors concerning the individual's functional limitations and restrictions.   As plaintiff acknowledges, however, an administrative law judge need not analyze and elaborate on each of the seven factors when making a credibility determination. His decision need only be sufficient to assure the reviewing court that he considered the

24

important evidence and to enable the court to trace the path of his reasoning.  Brown v. Barnhart, 298 F. Supp. 2d 773, 792 (E.D. Wis. 2004) (citing cases).

In assessing plaintiff's credibility, the administrative law judge considered plaintiff's daily activities of light housework, child care, cooking, dishwashing and doing laundry.  He also noted that plaintiff's testimony concerning the symptoms of the persistence of her heart condition were not credible because by October 2006 her cardiomyopathy had resolved to a considerable extent.  He concluded that the treatment records and lack of invasive procedures or strong pain medication indicated that her spinal impairment was not consistent with her testimony considering the severity of her symptoms.  The administrative law judge also noted that plaintiff's complaints of back pain were intermittent.  These findings are supported by the record and are adequate to support the credibility determination.

The only significant omission raised by plaintiff is the administrative law judge's failure to discuss the side effects of her medications.  Although plaintiff points out that Niazi and Ascensio identified numerous possible side effects from plaintiff's medications, the only two that plaintiff said she experienced were dizziness and drowsiness.  It is true that the administrative law judge did not mention these side effects in his decision. Nonetheless, that omission is not material to the outcome.  The administrative law judge appears to have accommodated plaintiff's medication side effects when he found that plaintiff should not be

25

exposed to hazards like dangerous machinery or heights. Further, he could reasonably conclude from the fact that plaintiff sometimes drove to pick her daughter up from school that plaintiff's dizziness or drowsiness was not extreme.

In sum, plaintiff has not demonstrated that this is one of those rare occasions on which the court should disturb the administrative law judge's credibility finding. The administrative law judge was not patently wrong. <u>Prochaska v. Barnhart</u>, 454 F.3d 731, 738 (7th Cir. 2006). He built an accurate and logical bridge between the evidence and his conclusions that plaintiff's statements concerning her limitations were not fully credible and that plaintiff was capable of a reasonable range of sedentary work. Because his findings are supported by substantial evidence in the record, the decision must be affirmed.

ORDER

IT IS ORDERED that the decision of defendant Michael J. Astrue, Commissioner of

Social Security, is AFFIRMED and plaintiff Carmella Labonne's appeal is DISMISSED.  The

clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 2nd day of September, 2008.

BY THE COURT:


/s/
_____
BARBARA B. CRABB
District Judge

27